IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Danny Lee, <br><br> Plaintiff, <br><br> v. <br><br> Wexford Health Sources, Inc., *et al.*, <br><br> Defendants. | Case No. 1:13-cv-03255 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Danny Lee, a former inmate at the Stateville Correctional Center ("Stateville"), initiated this lawsuit against Wexford Health Sources, Inc. ("Wexford"), Dr. Anton Dubrick ("Dr. Dubrick"), Dr. Imhotep Carter ("Dr. Carter") (collectively, the "Wexford Defendants") and former Warden Marcus Hardy ("Hardy"). Lee alleges one cause of action pursuant to 42. U.S.C. § 1983: deliberate indifference to a serious medical condition. First Am. Compl. [18] ¶¶ 8-44. Hardy and the Wexford Defendants have separately moved for summary judgment. As explained below, the Wexford Defendants' Motion for Summary Judgment [86] is denied, while Hardy's Motion for Summary Judgment [89] is granted.

I. Background[1]

Lee was an inmate in the custody of the Illinois Department of Corrections from 1976 until August 1, 2013. WSOF ¶ 1. From 2005 until his release on August

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. "WSOF" refers to the Wexford Defendants' statement of undisputed facts [87], with Plaintiff's responses [102] cited as "R. WSOF." "HSOF" refers to Hardy's statement of undisputed facts [91], with Plaintiff's responses [101] cited as "R. HSOF." "PSOAF" refers to Plaintiff's statement of additional facts [100], with Hardy's responses [104] cited as "R. PSOAF."

1

1, 2013, he was incarcerated at Stateville. PSOAF ¶ 1. Hardy was the warden at Stateville in 2011 and 2012. HSOF ¶ 5. Wexford has a contract with the State of Illinois to provide health care to inmates at Stateville. *Id.* ¶ 7. Dr. Carter was the Medical Director at Stateville from July 2011 to May 2012. WSOF ¶ 2. Dr. Dubrick served as a staff physician at Stateville from the fall of 2011 until the spring of the following year. *Id.* ¶ 3.

## A. Lee's Treatment

The timeline of Lee's care is both disputed and critical to resolving the present motions. To wit:

- By November of 2011, Dr. Dubrick knew that: (1) Lee had diabetes and (2) Lee's diabetes placed him at a higher risk of infection. PSOAF ¶ 23. [2]

- On November 9, 2011, Lee complained to a Stateville Certified Medical Technician ("CMT") of hand pain and hand locking, and he was put on the nurses' sick call. *Id.* ¶ 4.

- On November 17, 2011, Lee complained that his hands were cramping up again, and a nurse referred him to the doctors' sick call. *Id.*

---

[2] Multiple assertions in the PSOAF are only supported by citations to the First Amended Complaint, which is not part of the evidentiary record. *Compare, e.g.,* PSOAF ¶ 5 *with* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."). Hardy disputes these assertions on the basis that "Plaintiff's First Amended Complaint does not constitute admissible evidence." *See, e.g.*, R. PSOAF ¶ 5; *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The Wexford Defendants simply did not respond to the PSOAF at all. The Court will accordingly presume that the Wexford Defendants do not dispute any assertions in the PSOAF which are not otherwise controverted in the WSOF. *See* Local Rule 56.1 ("All material facts set forth in the statement filed pursuant to section (b)(3)(c) will be deemed admitted unless controverted by the statement of the moving party."). As they pertain to Hardy, the Court will disregard any assertions in the PSOAF which are unsupported by citations to the record, unless that particular assertion is supported by other uncited materials in the record. *See* Fed. R. Civ. P. 56(c)(3) ("The Court need consider only the cited materials, but it may consider other materials in the record.").

- On November 26, 2011, Lee complained to a CMT of shoulder pain. Lee explained that he was unable to sleep and had difficulty eating due to pain. The CMT told Lee she was the only one on duty and walked away without proving any medical treatment. *Id.* ¶ 5.

- On or around the morning of November 27, 2011, Lee complained to a correctional officer of right shoulder pain. The officer told Lee he would call a CMT. That afternoon, a CMT consulted with Lee. Though Lee complained of right shoulder pain, the CMT left without providing any medical treatment. *Id.* ¶ 6.

- The next day (November 28, 2011), Lee was seen by a CMT. Medical records from this day indicate that Lee was in distress and dehydrated. He was not able to raise his right hand. *Id.* at ¶ 7. Lee was then sent to the health care unit, based on complaints regarding his right shoulder, where he was examined by a nurse. *Id.* ¶ 8.

- The parties dispute whether Dr. Dubrick first examined Lee on November 28, November 29 or November 30, 2011. *Compare* WSOF ¶¶ 11-12 *with* PSOAF ¶ 9. The parties agree that during this first examination, whenever it took place, Dr. Dubrick prescribed Plaintiff Toradol (an anti-inflammatory drug) and Vicodin (a pain medication and anti-inflammatory). PSOAF ¶ 9. Dr. Dubrick also ordered Lee a sling. *Id.* The parties do not dispute that Dr. Dubrick's "impression was that Lee was suffering from tendinitis." *Id.*

- On November 30, 2011, a CMT noted that Lee had complaints of bilateral shoulder pain and neck stiffness. Lee was lying on his bunk crying and yelling, and he rated his pain at 10 out of 10. Lee was then brought back to the health care unit with an elevated temperature of 102.8 degrees and given another injection of Toradol. *Id.* ¶ 10.

- On December 1, 2011, Lee's records indicate he was very agitated and complained of severe shoulder pain. More pain medication was prescribed and additional blood testing was ordered. *Id.* ¶ 12.

- On December 3, 2011, Lee complained of severe pain in both shoulders and requested pain medication. Lee stated that he was unable to cleanse himself because he was in so much pain. Lee was eventually given additional pain medication. *Id.* ¶ 13.

- On December 4 or 5, 2011, Lee had worsening right shoulder pain and stated he was not getting any pain medications. Lee was admitted to the infirmary on December 5, 2011. A review of the medical records from December 4 or 5 reveals no drugs intended "to treat conditions related to his shoulder complaints." *Id.* ¶¶ 14-15.

- On December 6, 2011, Dr. Dubrick received the test results from Lee's blood work, which confirmed that Lee had a positive culture for beta-hemolytic strep ("Strep B"), meaning Lee had bacteria growing in his blood. Lee was prescribed antibiotics and referred for an echocardiogram to determine if he had heart valve damage. *Id.* ¶ 16.

- On December 7, 2011, Lee complained of pain in both shoulders that kept him awake. *Id.* ¶ 17.

- On December 12, 2011, Lee's medical records noted that an indication of cellulitis, a localized superficial skin infection, was mostly resolved. The records make no mention of Lee's blood infection. *Id.* ¶ 18.

- On December 19, 2011, Lee's records indicate that his cellulitis had resolved, and he was being discharged from the infirmary. The records again make no mention of whether his blood infection had resolved. *Id.* ¶ 19.

**B.     Lee's Grievances**

On December 26, 2011, Lee submitted a grievance regarding the medical treatment he received in November and December of 2011. *Id.* ¶ 30. On January 30, 2012, the Illinois Department of Corrections issued a memorandum responding to that same grievance. *Id.* ¶ 31. This memorandum, written by a Heidi Moss, stated that a review of Lee's medical file indicated that he was diagnosed with shoulder pain and that lab cultures did not reveal any type of blood infection. *Id.* On February 9, 2012, Hardy signed a Response to Committed Person's Grievance/Grievance Officer's Report supporting the Moss memorandum's conclusion that Lee had shoulder pain and no blood infection. *Id.* ¶ 32.

On April 1, 2012, Lee filed a second grievance regarding his request for his medical file. *Id.* ¶ 33. On November 15, 2012, Sherry Benton of the Administrative Review Board's Office of Inmate Issues wrote to Lee, responding to both his December and April grievances. *Id.* ¶ 34. The letter stated that there was no

indication that Lee had a blood infection and recommended that Lee's grievance be denied. *Id.* Benton copied Warden Hardy on this letter. R. PSOAF ¶ 34.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, Lee. *CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## III. Analysis

Lee's sole cause of action against all four defendants sounds in deliberate indifference to an objectively serious medical condition. To succeed on this claim, Lee must prove that (1) he had "an objectively serious medical need; and (2) Defendants were deliberately indifferent to [Lee's] medical need." *Taylor v. Wexford Health Servs., Inc.*, No. 11-cv-7386, 2012 WL 245165, at *3 (N.D. Ill. Jan. 26, 2012); *see also Heard v. Illinois Dep't of Corr.*, No. 06-cv-644, 2012 WL 832566, at *5 (N.D.

6

Ill. Mar. 12, 2012) ("A deliberate indifference claim has two parts: an objective component and a subjective component.").

### A. Lee Had An Objectively Serious Medical Condition

An "objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010) (internal quotation omitted). A medical condition "need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.*

It is undisputed that on December 6, 2013, Lee was diagnosed with Strep B by Dr. Dubrick, and Lee was given prescriptions related to the same. *See supra* at *4. Accordingly, Lee had an "objectively serious medical need."

### B. A Reasonable Factfinder Could Infer That The Wexford Defendants Were Deliberately Indifferent

To satisfy the second element of his claim, Lee must adduce evidence which suggests that the Defendants were intentionally indifferent to an objectively serious medical need or condition—negligence, gross negligence or medical malpractice is insufficient. *Edwards v. Snyder,* 478 F.3d 827, 831 (7th Cir. 2007). A "delay in treatment may constitute deliberate indifference if the delay exacerbated an injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010) (citations omitted). It is also "enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the

7

risk." *Heard v. Illinois Dep't of Corr.*, No. 06-cv-644, 2012 WL 832566, at *5 (N.D. Ill. Mar. 12, 2012); *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (defendants must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference").

### 1. The Wexford Defendants

The Wexford Defendants make two arguments in support of their motion for summary judgment. The first is that no reasonable factfinder could determine that the Wexford Defendants were deliberately indifferent to Lee's medical condition, as Lee was "seen and treated with a myriad of medications and diagnostic tests . . . admitted to the infirmary and made a full recovery." [88] at *11. This conclusion elides critical facts.

A defendant "cannot absolve himself from liability because he gave the inmate some treatment, if the treatment was blatantly inappropriate." *Heard*, 2012 WL 832566, at *6 (internal quotation omitted). Here, it is undisputed that (1) Lee had diabetes, which made him more likely to suffer an infection; (2) due to "Lee's diabetes, Dr. Dubrick felt [Lee] had a heighted risk and tendency of infection," PSOAF ¶ 23; and (3) Dr. Dubrick nevertheless initially diagnosed Lee's blood infection as tendinitis, despite Lee's representations that his shoulder hurt so badly that he was struggling to eat or sleep. *See supra* at *3-4. A reasonable factfinder could infer, from these undisputed facts, that Dr. Dubrick's treatment was "blatantly inappropriate," as "it is enough to show that the defendants knew of a

8

substantial risk of harm to the inmate and disregarded the risk." *Heard*, 2012 WL 832566, at *5.

The Wexford Defendants' argument regarding the treatment Lee eventually received also ignores the delay Lee experienced. A "delay in treatment may constitute deliberate indifference if the delay exacerbated an injury or unnecessarily prolonged an inmate's pain." *McGowan,* 612 F.3d at 640. Here it is undisputed that Lee complained of "hand locking" and "hand pain" on November 9. *See supra* at *2. It is similarly undisputed that, on November 26 and November 27, Lee complained to Wexford personnel specifically regarding pain in his shoulder. *Id.* at *3. The parties dispute whether Dr. Dubrick first examined Lee on November 28, November 29 or November 30. *Id.* The Court is not permitted to resolve this factual dispute at summary judgment but concludes, drawing all reasonable inferences in Lee's favor, that a reasonable jury could infer that the delay between Lee's initial complaints and his treatment "unnecessarily prolonged" his pain. *See Hardy v. Hardy*, No. 10-cv-5921, 2013 WL 5325077, at *6 (N.D. Ill. Sept. 20, 2013) (defendant "may have been deliberately indifferent by delaying treatment or not fully following through with the treatment given; that is for the jury to determine").

The Wexford Defendants' only other argument is that they are entitled to summary judgment because Lee has suffered no damages. [88] at *12 ("Lee's claimed damages are wholly unsupported and summary judgment should be granted as to Defendants."). Here again, the Wexford Defendants have misconstrued the law and the facts. As a legal matter, damages are not an "element

9

of liability in a deliberate indifference claim." *Cotts v. Osafo*, 692 F.3d 564, 569 (7th Cir. 2012); *see also* Federal Civil Jury Instructions of the Seventh Circuit 7.12 (requiring that plaintiff prove defendant's conduct caused "harm"). Lee has, in fact, adduced cognizable evidence of the required harm, including, *inter alia*, his testimony regarding the pain he suffered and the health risks he experienced as a result of the infection at issue here. *See supra* at *4.

Lee has shown that he had an objectively serious medical condition, and a reasonable juror could infer that the Wexford Defendants were deliberately indifferent to the same, based upon either the "inappropriate" treatment he received or the "delays" he experienced. Accordingly, the Wexford Defendants' motion for summary judgment is denied.

### 2. Warden Hardy

This Court previously dismissed Lee's claim against Warden Hardy in his official capacity pursuant to *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). [76] at *4-5. This Court, however, initially allowed Lee's claim against Warden Hardy in his personal capacity to proceed, as Lee had adequately alleged that Hardy "had notice of a widespread practice by IDOC employees at Stateville under which inmates with serious medical conditions, such as Lee, were routinely denied access to proper or sufficient medication and medical care," and that Lee's injuries "were directly and proximately caused by the policies and practices of Defendants Hardy and Ramos." *Id.* at *6-7 (quoting First Am. Compl. [18] ¶¶ 27, 28).

10

Summary judgment, however, "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation omitted). Lee's burden has accordingly increased at this stage of the proceedings, but his evidence regarding Defendant Hardy has not made a correlative leap. In fact, Plaintiff's claim lacks any evidentiary support.

Lee admits that the "only bases" of his "contention that there was a widespread practice of denying access to medication and medical care is Lee's own experience, conversations with other inmates, and grievances filed against the institution." R. HSOF ¶ 63. Each of these "bases" is legally deficient. Lee's own experience is not enough by itself to establish the existence of a widespread practice. *See Johnson v. Hart*, No. 10-cv-240, 2011 WL 1706117, at *6 (N.D. Ill. May 5, 2011) ("A policy or practice claim requires more evidence than a single incident to establish liability. A custom or policy cannot be attributed to the County on the basis of one inmate's dissatisfaction with the quality of his medical care actually received.") (internal quotations and citations omitted). Likewise, conversations "with other inmates" and other unspecified "grievances," without additional detail, are similarly inadequate at this "put up or shut up" stage of litigation. *See Mayer v. Edwards,* 538 F. Supp. 2d 1041, 1043-44 (N.D. Ill. 2008) (where defendants were parties to prior complaints and investigations, but plaintiff failed to demonstrate that those complaints concerned the same type of

11

constitutional violation, that any of the complaints were sustained, or that the officers were disciplined, there was no indication of deliberate indifference to a widespread practice); *Hernandez v. Nielson,* No. 00-cv-50113, 2002 WL 31804788, at *1 (N.D. Ill. Dec. 13, 2002) ("[T]he court is at a complete loss to understand what possible relevance this evidence [of prior lawsuits] has in proving the Department maintains a widespread practice . . . Just because somebody alleges something does not make it so.").

Even if Plaintiff produced sufficient evidence to empower a reasonable factfinder to infer that a practice of denying access to healthcare existed at Stateville (and he has not), his claim against Hardy would still fail because there is no evidence in this record regarding Hardy's putative knowledge of any such practice. It is undisputed that the "only evidence Lee could articulate in support of his contention that Marcus Hardy was aware of procedures and policies denying healthcare is that '[Hardy is] the warden. I mean if you're in charge of something, how can you not be aware of something going on in a major level.'" R. HSOF ¶ 64 (quoting Ex. A, 80:3-81:17). Even drawing all plausible inferences in Lee's favor, no reasonable factfinder could hold Hardy liable on this basis alone.

Indeed, the suggestion that Hardy is personally liable for any putative practice simply because he was "in charge" is a non-starter. The "theory of *respondeat superior* does not support a claim for relief under § 1983." *Harris v. Ghosh*, No. 10-cv-7136, 2012 WL 3903894, at *7 (N.D. Ill. Sept. 7, 2012). To hold a supervisor like Hardy liable for the actions of his subordinates under § 1983, Lee

12

must adduce evidence that Hardy knew about the alleged misconduct and facilitated it, approved it, condoned it, or turned "a blind eye for fear of what [he] might see." *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001) (internal quotation omitted).

This principle is particularly important in the context of non-medical supervisors like Hardy, as governing case law recognizes that prison "directors and wardens are entitled to relegate to the prison's medical staff the provision of good medical care." *Gevas v. Mitchell,* 492 Fed. App'x 654, 660 (7th Cir. 2012) (internal quotation omitted). While it is true that this principle gives way when a prison official "has reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," there is no basis in this record to conclude that this exception can be applied to Hardy. *Arnett v. Webster,* 658 F.3d 742, 755 (7th Cir. 2011). The only specifically identified grievances in the record were not sent to Hardy until after Plaintiff's Strep B was resolved. *See supra* at *5-7. At most, Lee's evidence shows that Hardy failed to "tell the medical staff how to do its job" and did not "drop everything . . . to investigate [Lee's] claims"— neither is a sufficient basis to conclude that Hardy was aware of (or turned a blind eye to) any ostensible practice regarding the provision of medical treatment. *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009).

At bottom, Plaintiff's own testimony acknowledges that (i) he has no evidence to support his allegations regarding a widespread practice at Stateville and (ii) he

has no evidence to suggest that Hardy knew (or should have known) of such a practice.

## IV. Conclusion

In light of the foregoing, the Wexford Defendants' Motion for Summary Judgment [86] is denied. Hardy's Motion for Summary Judgment [89] is granted.

Date: August 22, 2016	ENTERED:

_____
John Robert Blakey
United States District Judge